### In re PRUDENCE BONDS CORPORATION.

### METZ et al. v. MANUFACTURERS' TRUST CO.

#### No. 304.

Circuit Court of Appeals, Second Circuit.
March 8, 1937.

Rabenold & Scribner, of New York City (Mark Hyman, Louis G. Bernstein, and Julius J. Rosenberg, all of New York City, of counsel), for appellants Adam Metz and others.

George M. Jaffin and Leonard Klaber, both of New York City (Harry Schneider, of New York City, of counsel), for appellants "Independent Protective Committee."

Newman & Bisco, of New York City (Frank J. Gillis, Frederick E. Winkler, and David Barnet, all of New York City, of counsel), for appellee Manufacturers Trust Co.

Cullen & Dykman, of Brooklyn, N. Y. (Patrick J. Mahoney and Ralph W. Crolly, both of Brooklyn, N. Y., of counsel), for Brooklyn Trust Co., amicus curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

This is an appeal from an order in a reorganization proceeding under section 77 B of the Bankruptcy Act, 11 U.S.C.A. § 207, by which the "servicing" of certain pledged bonds and mortgages—security for two series of bonds of the debtor—was transferred from the reorganization trustees to the Manufacturers Trust Company, the pledgee. The only interest at stake is the privilege of collecting the interest upon, and taking care of, the pledged mortgages, pending the acceptance or rejection of plans of reorganization, several of which are still before the District Court. By the agreement of pledge this privilege was granted to the Prudence Company, Inc., the guarantor of both series until default, after which it passed to the debtor, also until default; the bonds and mortgages are in the actual possession of the pledgee, but the documents essential to "service" them were in the possession of the Prudence Company, Inc., which turned them over to the debtor's trustees, as will appear. The debtor filed a petition for reorganization on June 29, 1934, and the judge appointed trustees who are still serving. The Prudence Company, Inc., notwithstanding default upon its guaranty, continued to "service" the collateral until January 25, 1935, when the Court of Appeals of New York finally decided that the privilege had ended. President, etc., of Manhattan Company v. Prudence Co., Inc., 266 N.Y. 202, 194 N.E. 408. The pledgee immediately demanded that it conform to this decision, to which it countered by a reorganization petition under section 77B, 11 U.S.C.A. § 207, filed in the District Court on February 1, 1935, which was approved and on which trustees were appointed. We decided, In re Prudence Company, Inc., 82 F.(2d) 755, that the reorganization petition did not give the Prudence Company, Inc., any greater rights than it had had before, and on July 15, 1936, its privilege, which had been continued pendente lite, finally came to an end by order of the District Court. The trus-

tees of this debtor believed at that time that plans for the reorganization of the twelfth and thirteenth series of its bonds would probably be accepted or rejected not later than January 2, 1937, and prevailed upon the pledgee, notwithstanding its two victories, to enter into a stipulation on July 27th that they should take over from the Prudence Company, Inc., all documents "having to do with the servicing of the collateral security," and do the servicing themselves, though up to that time they had never had charge of it. This stipulation then proceeded: "In the event, however, that a plan for the reorganization of either of the above mentioned series of Prudence Bonds has not been confirmed on or before January 2, 1937, and in the opinion of the said Manufacturers Trust Company, as successor trustee as aforesaid, is not likely to be consummated within a reasonable time thereafter * * * upon written notice served upon the trustees of the debtor herein that it desires to service said collateral security held for the payment of bonds of that series, the said Manufacturers Trust Company * * * may take over and perform such services, and the trustees of the debtor hereby agree forthwith to surrender and deliver to the Manufacturers Trust Company * * * all moneys, securities, instruments, assignments of rents, papers and documents having to do with the servicing of such collateral security." The court approved the stipulation on the following day, and the trustees began to "service" the pledged mortgages and continued until January 12, 1937, when the pledgee made demand upon them under the stipulation to abdicate in its favor. The trustees were willing to do so, and have not appealed upon this motion, but one committee of bondholders, the "Independent Prudence Bondholders Protective Committee," moved on January 18th to restrain the pledgee, and another committee, made up of Adam Metz and others, intervened on the 22d in support of the application. The court denied the motion, and both committees have now appealed.

The case has been argued as though it were controlled by our decision in Re Prudence Co., Inc., supra; that is, as though, the right of the debtor to "service" the collateral having ended under the terms of the agreement because of its default, the pledgee was entitled as matter of right to take over the privilege. That, however, is not a necessary consequence. The Pru-

dence Company, Inc., had no interest in the property of any sort except by virtue of the agreement; it did not own the pledged property; it was only a guarantor of the bonds issued by the debtor. Consequently, when it defaulted, its privilege, which the agreement had made conditional upon the continued performance of its guaranty, necessarily came to an end; it had no interest in the pledge to bring into reorganization. The same is true pari passu of the debtor, so far as its privilege depends upon the agreement; but as pledgor it is the owner of the collateral, the bonds and mortgages, and it might therefore be argued that, since the interest of the bondholders—who are in equity the pledgees—may be brought into the reorganization, and since indeed the plans now pending will, if they go through, reorganize that interest, the reorganization court has power to possess itself of the pledge pendente lite, and take over the "servicing" which is an incident of possession. We do not say that the reorganization court has such a power, because it is not necessary to decide the point; but we do not wish by passing it sub silentio to let it be assumed that we have held the negative.

 We can avoid deciding because, assuming that the power exists, its exercise is clearly within the court's discretion; it need not take over possession, even if it can. In any plan the interest of a pledgee after default should be considered to include the profits from the pledge after he has applied for sequestration; and it is a matter for each case whether the pledgee shall be allowed to collect, or the reorganization trustee shall do so for him. In the case at bar the trustees had never "serviced" the bonds before July, 1936, and, although they took over part of the organization of the Prudence Company, Inc., it does not follow that they would have done it better, or more cheaply, than the pledgee. At any rate, at the end of July, 1936, the trustees obviously did not suppose that after five months there was any good reason for their continuing; that was an informed judgment, which the judge was justified in accepting. (Incidentally the Metz Committee opposed holding off the pledgee even for so long as that; its position has now changed.) By the stipulation the pledgee gave up any attempt to assert any existing privilege during that period, and the trustees enjoyed it without contest. Good faith re-

quired the judge to honor the agreement he had approved, unless it very gravely prejudiced the interests of bondholders. It is argued that, not being parties to the stipulation, they should not be concluded. As to the Metz Committee they are in no position to complain, for the reason we have just given. The only evidence regarding the "Independent Committee" is an affidavit of one of its counsel in January, 1937, in which he swore that he personally had only recently learned of the stipulation, and that the bondholders had been "lulled" into the belief that the "servicing" would continue. Any such assurance was altogether gratuitous; the pledgee had been steadily fighting for its rights, and, the committee should have learned of it. That after winning against the guarantor in both courts the pledgee should have yielded to the debtor without a struggle and for no consideration was an unjustified assumption. It was not necessary to cite the committee upon approval of the stipulation, and, if it be true that they knew nothing of it, that need not concern the pledgee who dealt with the court and gave its quid pro quo. As already suggested, there is no reason à priori to prefer one administration to the other; it was for the judge to choose between them; his word was final, and, if we had thoroughly understood the controversy, we should never have allowed the appeal.

Order affirmed.