**In re T.J. BORCHARDT and Delila Borchardt, Debtors.**

**Bankruptcy No. 3–83–1778.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 9, 1985.

Wm. Needler, Chicago, Ill., Barry Reed, Minneapolis, Minn., for debtors.

Gary Koch, New Ulm, Minn., for Farmers State Bank of Sherburn.

## ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came before the court on the motion of Farmers State Bank of Sherburn ("the bank") for relief from the automatic stay. William Needler and Barry Reed, attorneys, appeared on behalf of the debtors. Gary Koch, attorney, appeared on behalf of the bank. Based upon the file, records, arguments of counsel, and stipulation entered into by the parties, as approved by this court in its order of April 20, 1984, the court makes the following order pursuant to the Rules of Bankruptcy Procedure.

The debtors filed their petition for relief under Chapter 11 of the Bankruptcy Code on October 20, 1983. During the course of the above-entitled Chapter 11 proceeding, the debtors and the bank entered into a stipulation whereby the debtors were authorized to use cash and cash collateral which were encumbered by liens of the bank in order to enable the debtors to continue their farming operation. By order of this court dated April 20, 1984, the stipulation entered into by the parties was approved. The stipulation provided that the bank would advance the funds needed by the debtors to plant their 1984 corn and soybean crop on real estate currently farmed by the debtors. In addition, the bank advanced the sum of $2,000.00 per month to cover the debtors' living expenses until the 1984 crop was harvested. In addition, the bank advanced 1984 cash rents in the amount of $27,200.00.

The debtors agreed to provide the bank with a post-petition replacement lien encumbering the 1984 crop to the extent of advances made to finance the 1984 crop and to the extent of advances made for the debtors' cash rent and living expenses. The debtors further agreed to liquidate the 1984 crop and pay in full the bank's post-petition lien on or before December 1, 1984. Pursuant to this provision, the bank advanced to the debtors, during the 1984 crop season, the sum of approximately $104,654.89. As of April 4, 1985, the debtors have paid over to the bank crop proceeds in the approximate amount of $85,617.05, leaving a deficiency of approximately $19,037.84 remaining on the bank's post-petition lien.

Article IV of the stipulation required the debtors to pay the remaining indebtedness due the bank of approximately $330,000.00, amortized over a period of 25 years, but payable in 10 years with interest at a rate of 12½% per annum upon the remaining indebtedness due. The debtors agreed to make the first principal payment in the amount of $9,000.00 to the bank no later than December 1, 1984. The debtors have admitted to this court that they have failed to make the payment as required by Article IV of the stipulation and will not have the funds available to make said payment at any time in the near future.

In the event that the debtors failed to make the required payments, the stipulation provided that the bank could serve the debtors with written notice of default and allow 30 days from mailing of such notice for the debtors to cure said default. Upon

the debtors' failure to cure default and the filing of an affidavit by the bank documenting the same, the parties agreed, should the debtors fail to file counter affidavits within five days, the court could enter an order lifting the stay as to all items of personal and real property owned by the debtors in which the bank possessed a security interest.

On March 7, 1985 the bank filed with this court its motion for relief from the automatic stay and its attorney's affidavit setting forth the debtors' default to the above-aforementioned stipulation. The debtors filed a counter affidavit with this court on March 15, 1985.

## DISCUSSION

■ This court has consistently held that once a stipulation has been entered into and approved by this court the express agreement of the parties will be strictly enforced. This court will not use its equity powers to disregard the express agreement and allow the defaulting party another chance to accomplish what it has failed to do. See *Matter of Vogel Ice Cream Company, Inc.*, 7 B.R. 430 (Bkrptcy.D.Minn. 1980).

The debtors take the position that neither the parties nor the stipulation contemplated that they would be unable, upon liquidation of the 1984 crop, to pay in full all advances made for the 1984 crop season. Consequently, the debtors claim there is a flaw in the stipulation which was not contemplated by the parties nor provided for in the stipulation. Due to this "flaw," the debtors look to the Code for the proposition that the bank is entitled to a super priority pursuant to 11 U.S.C. § 507(b).

The debtors further argue, in regard to Article IV, that the parties contemplated a confirmed plan of reorganization to be in place prior to the December debt-reduction payment becoming due and that Article IV was inserted as a mere recital of the provision contained in the debtors' plan of reorganization. Therefore, the debtors contend they have made a good faith attempt to have their plan approved and should not be held in default of the provision contained in Article IV of the stipulation.

■ The debtors' argument is spurious, illusory, and totally without merit. In clear and unambiguous language, the stipulation provides that in the event of default, the bank is entitled to relief from the automatic stay without further litigation upon proper written notice and application to this court. The debtors' failure to repay in full all advances made during the 1984 crop year and the December 1 debt-reduction payment clearly is a default which was contemplated by the parties provided for in the provisions of the stipulation.

The court realizes the sometimes harsh results which may follow from a party's inability to comply with the terms of a stipulation it has entered into. However, it is the duty of counsel to fully advise their client as to the legal consequences of entering into a stipulation agreement. This court will not be a vehicle to rectify counsel's and debtors' failure to fully explore the long-range effects of entering into a stipulation such as the one which is the subject matter of this proceeding. This court relied upon the good faith of the parties in entering its order of April 20, 1984 approving the stipulation in all respects, and accordingly will strictly enforce the terms of the agreement.

THEREFORE, IT IS HEREBY ORDERED that the motion of Farmers State Bank of Sherburn for relief from the automatic stay be granted so as to allow the bank to foreclose its security interest pursuant to the terms of the stipulation entered into by the parties.

Entry of this order is hereby stayed 10 days.